UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| ROBERT JAMES REED, | ) | CASE NO. 4:06 CV 2369 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| DOUG SOLITTO, et al., | ) | AND ORDER |
| | ) | |
| Defendants. | ) | |

On September 29, 2006, plaintiff pro se Robert James Reed filed this action under 42 U.S.C. § 1983 against Ohio State Penitentiary ("OSP") Quartermaster Doug Solitto, OSP Institutional Inspector Mr. Jackson, OSP Warden Marc Houk, and the Ohio Department of Rehabilitation and Correction. In the complaint, plaintiff alleges that Mr. Solitto assaulted him and acted in a threatening and intimidating manner. He seeks monetary damages.

**Background**

Mr. Reed indicates that he is currently incarcerated in the camp at OSP. He indicates he took two pairs of pants to the quartermaster to be repaired on January 18, 2006. He was instructed to return the next day to retrieve them. When he arrived the following day, he was given only one pair of pants. Mr. Solitto informed him that he could not obtain the other pair because he did not have his name in them. Mr. Reed claims that when he turned around and walked away, Mr.

Solitto called out to him and asked what he wanted to do about the other pair of pants. Mr. Reed replied that he would "take care of it." (Compl. at 3.) Mr. Solitto asked how Mr. Reed intended to "take care of it" and Mr. Reed claims he indicated he would file an Informal Complaint Resolution form with Mr. Solitto's supervisor. He contends that Mr. Solitto became irate and asked if Mr. Reed had threatened to kill him and his family? Mr. Solitto denied the interpretation. The two exchanged words. Mr. Reed claims Mr. Solitto grabbed him by the collar and shoved his face into the wall telling him to stare at the wall. He indicates the officer then yelled at him and drew attention to his predicament. Mr. Reed claims the officer proposed that he would not file a conduct report which could rob Mr. Reed of his camp status and early release chances, if Mr. Reed did not file the Informal Complaint. Mr. Reed indicates he accepted the deal because he was afraid

Upon returning to his cell, he had time to reconsider the arrangement. He sent a kite to Lieutenant Brown and spoke to him on January 22, 2006. The Lieutenant urged Mr. Reed to contact the Institutional Inspector, Mr. Jackson. He claims he did not file a formal grievance because he was still afraid, but instead sent a message to him indicating they needed to speak right away. Mr. Reed contends Mr. Solitto became aware that he had been speaking to prison supervisors and confronted him in the cafeteria to remind him of their agreement. When Mr. Reed returned to his dorm area after the meal, he telephoned his sister and asked her to contact the Ohio Highway Patrol. He was interviewed by a Highway Patrol officer on January 27, 2006. He claims thereafter, he became very anxious about encountering Mr. Solitto.

Mr. Reed contends that Mr. Solitto made several attempts to have disciplinary charges brought against him and made threats to harm him. He indicates that Mr. Solitto pointed his finger like a gun and imitated firing two shots in Mr. Reed's direction. He states Mr. Solitto

tried to bring charges against him for being out of place when he was volunteering to clean the kitchen. The officer in charge of the kitchen area would not bring the charges. The following day, Mr. Reed was again volunteering to clean the kitchen. While he was cleaning, a corrections officer was conducting a search of his cell. Five cigarettes, which are considered to be contraband, were found. Mr. Reed claims they were planted by an inmate at Mr. Solitto's request. He was charged with possession of contraband, but was found "not guilty" at a subsequent hearing. He states ODRC officials have done nothing to prevent future occurrences by reassigning Mr. Solitto to another post.

## **Analysis**

A prisoner must allege and show that he has exhausted all available administrative remedies before filing a civil rights action in federal court to challenge the conditions of his confinement. 42 U.S.C. §1997e; Wyatt v. Leonard, 193 F.3d 876, 878 (6th Cir. 1999); Brown v. Toombs, 139 F.3d 1102, 1104 (6th Cir. 1988), cert. denied, 525 U.S. 833 (1998). To establish that he exhausted his remedies prior to filing suit, the prisoner must plead his claims with specificity and show that he has exhausted his administrative remedies with respect to each allegation against each defendant by attaching to the complaint a copy of the applicable administrative dispositions or, in the absence of written documentation, describing with specificity the administrative proceedings and their outcomes. Knuckles-El v. Toombs, 215 F.3d 640, 642 (6th Cir. 2000). The prisoner must exhaust each specific claim against each defendant named in the complaint to satisfy the exhaustion requirement. See Curry v. Scott, 249 F.3d 493, 504-05 (6th Cir. 2001). Moreover, the prisoner must specifically grieve allegations of retaliation or conspiracy against the defendants he names in his complaint. Garrison v. Walters, No. 00-1662, 2001 WL 1006271 (6th Cir. Aug. 24, 2001);

Curry, 249 F.3d at 504-05. In the absence of such particularized averments concerning exhaustion, the action must be dismissed. Id.

Ohio Administrative Code § 5120-9-31 sets forth a three-step grievance procedure for administrative remedies for inmates housed in Ohio prisons. Under this section, an inmate initiates the grievance procedure by filing an Informal Complaint Resolution form with the prison official whose area of responsibility is most related to the grievance. OHIO ADMIN. CODE § 5120-9-31(J)(1). If the inmate is dissatisfied with the informal complaint response, or if there has been no response to the complaint, the inmate may file a Notification of Grievance form with the Institutional Inspector. OHIO ADMIN. CODE § 5120-9-31(J)(2). If this second step does not provide satisfactory results, the inmate may file an appeal with the office of the Chief Inspector. OHIO ADMIN. CODE § 5120-9-31(J)(3). The Chief Inspector's written response to the inmate's appeal is the final decision on the grievance. Grievances against the Warden and Institutional Inspector must be filed directly to the Office of the Chief Inspector. OHIO ADMIN. CODE § 5120-9-31(L). The decision of the Chief Inspector or designee is final. OHIO ADMIN. CODE § 5120-9-31(L).

Plaintiff has not demonstrated that he has exhausted his administrative remedies for each claim against each defendant. He has not attached copies of relevant grievances and includes only general conclusory statements of exhaustion in his pleadings which are not sufficient to satisfy the mandates of § 1997e. The complaint contains claims concerning multiple incidents and multiple defendants. There is no way to determine from the complaint which official grievance forms were filed and, if any were filed, to which incidents or defendants they applied. Without this information, the court cannot ascertain which claims, if any, were properly exhausted. The inmate bears the burden of establishing exhaustion of administrative remedies. Brown, 139 F.3d at 1104.

4

Plaintiff has not satisfied that burden.

## **Conclusion**

Accordingly, this action is dismissed without prejudice pursuant to 42 U.S.C. §1997e. The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[1]

IT IS SO ORDERED.


Dated: January 4, 2007         *s/     James S. Gwin*
                               JAMES S. GWIN
                               UNITED STATES DISTRICT JUDGE

---

[1] 28 U.S.C. § 1915(a)(3) provides:

An appeal may not be taken in forma pauperis if the trial court certifies that it is not taken in good faith.